**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff;<br><br>v.<br><br>SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | No. 1:12-cv-22958<br><br>**UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION**<br><br>Judge Patricia A. Seitz |

**UNITED STATES' MOTION FOR A PRELIMINARY INJUNCTION**

The United States respectfully asks the Court to enter a preliminary injunction against Defendants' dietary policies and order Defendants to provide a certified kosher diet to all prisoners who have a sincere religious basis for keeping kosher. Since 2007, the Florida Department of Corrections ("FDOC") has failed to offer a kosher diet option, forcing hundreds of prisoners to violate their religious beliefs on a daily basis. This failure violates the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc ("RLUIPA"). Indeed, FDOC's own study group commissioned in 2007 to assess whether to continue FDOC's then-existing kosher diet program warned that terminating the program would likely violate federal law. FDOC ignored this warning and cancelled the program. This action made FDOC an outlier – the only large American correctional system not to offer a kosher diet to its prisoners.

Seven months after the United States filed this litigation, Defendants reversed course and issued a new policy that purportedly will offer a kosher diet in most FDOC facilities by the fall of 2013. This policy demonstrates conclusively that FDOC's failure to offer a kosher diet since

2007 violates RLUIPA, as Defendants cannot simultaneously implement a statewide kosher diet plan and prove – as RLUIPA requires – that they have compelling interests in *not offering* such a plan.

While FDOC's new kosher diet program demonstrates that the United States is entitled to judgment as a matter of law, the new program continues to violate RLUIPA in several important ways. Most notably, the program admits prisoners only after testing their "sincerity" by forcing them to consume exclusively *non-kosher* food for months. This illogical requirement, along with others, places a substantial burden on prisoners' religious practice in conflict with settled law. For these reasons, the United States is likely to prevail on the merits of its RLUIPA claim.

Judicial intervention is necessary to further the public interest in enforcing federal civil rights laws and to prevent irreparable harm to prisoners whose religious exercise is burdened by FDOC's dietary policies. Indeed, Defendants' persistent refusal to maintain a lawful kosher diet program highlights the need for an injunction from this Court. Defendants adopted their prior kosher diet program in 2004 shortly after settling litigation brought by a Jewish prisoner, *see Cotton v. Dep't of Corr.*, No. 1:02-cv-22760 (S.D. Fla.), then terminated the program three years later despite a warning from their own study group that doing so would violate federal law. When the United States Department of Justice advised Defendants in August 2012 that their dietary policies violated RLUIPA, Defendants refused to consider implementing any type of kosher diet option. And despite eventually issuing a flawed kosher diet plan in response to this litigation, Defendants continue to assert – both here and in a separate case before the Eleventh Circuit – that prisoners have no legal right to a kosher diet under RLUIPA. *See* Appellee's Opp. to Summ. Reversal, *Rich v. Secretary*, No. 12-11735 (11th Cir.), at 2-3.

Accordingly, this Court should issue a preliminary injunction ordering Defendants to provide a certified kosher diet to all prisoners with a sincere religious basis for keeping kosher and enjoin Defendants' new Religious Diet Program to the extent that it violates RLUIPA.

**BACKGROUND**

This litigation centers on FDOC's failure to provide a kosher diet to prisoners in accordance with federal law. In 2007, FDOC discontinued its existing kosher diet program against the recommendation of FDOC's own Study Group on Religious Dietary Accommodation in Florida's State Prison System (the "Study Group"). The Study Group advised FDOC to "[r]etain a kosher dietary program" open to "those inmates who have been expertly appraised or vetted" to ensure their sincerity. Study Group Report, attached as Exhibit A, at 2. Indeed, the Study Group warned that discontinuing the kosher program would violate RLUIPA, as a prisoner desiring to keep kosher "is substantially burdened" by the denial of kosher food and "it is improbable that [FDOC] can satisfy a court's inquiry into whether the department is furthering a compelling interest, let alone that denying inmates' religious accommodation is the least restrictive means available." Ex. A at 27. Despite this analysis, FDOC terminated the kosher program on August 16, 2007. *See* Issue Brief on Religious Dietary Accommodation in Florida Prisons, attached as Exhibit G.

Three years later, on August 16, 2010, FDOC initiated a pilot kosher diet program ("Pilot Program") at the South Unit of the South Florida Reception Center near Miami. The Pilot Program only accommodates a small fraction of prisoners who have a sincere religious basis for keeping kosher. Before its discontinuation in 2007, FDOC kosher diet program averaged approximately 250 prisoners per day. Ex. A. at 10. The Pilot Program began with 11 prisoners and has accommodated as few as 8 prisoners at a time during its operation. *See* Initial 30-Day

Review, attached as Exhibit B. In late 2011, FDOC officials met with religious figures advocating greater access to the Pilot Program. For example, on November 29, 2011, Rabbi Menachem Katz met with several FDOC officials at FDOC's South Bay facility to discuss expanding the Pilot Program. *See* Exhibit D (email from FDOC employee Janeth McLeod attaching a list of participants at the November 29, 2011, meeting). Despite these community efforts, Defendants did not expand the Program to any additional prisoners.

In May 2011, the United States Department of Justice opened a formal investigation into FDOC's food service operations pursuant to RLUIPA. *See* Ltr. from Timothy Mygatt to Jennifer Parker, May 9, 2011, attached as Exhibit C. During the 15-month investigation, the United States retained experts in prison administration and food service[1], reviewed thousands of pages of documents, interviewed FDOC officials, and toured several major FDOC facilities.[2] This investigation concluded that FDOC could provide a kosher diet consistent with its penological interests and that its failure to do so violated RLUIPA. The United States notified FDOC of its findings on August 1, 2012, and offered to negotiate a mutually agreeable plan to make a kosher diet available at FDOC facilities. *See* Ltr. from Michael Songer to Phillip Fowler, Aug. 1, 2012, attached as Exhibit E. FDOC rejected the offer to negotiate, and the United States filed the above-captioned suit on August 14, 2012.

FDOC moved to dismiss the United States' Complaint or transfer this litigation to the Northern District of Florida. *See* Defs' Mot. to Dismiss or Transfer Venue, Dkt. No 9. Shortly after this Court denied Defendants' motion, the United States agreed to Defendants' request to enter into formal mediation. Following a mediation session in Tallahassee, Defendants presented

---

[1] The United States retained John Clark, former Assistant Director of the Federal Bureau of Prisons, and Dennis Watkins, former BOP Regional Food Service Administrator. Mr. Watkins helped implement BOP's certified kosher food option in the 1990s.

[2] An attorney for the United States and two experts toured the following facilities: the South Florida Reception Center, South Bay C.I., Everglades C.I., and Dade C.I.

a settlement proposal to the United States on March 4, 2013, and offered a revised proposal on March 20, 2013. *See* Pl.'s Mediation Report, Dkt. No.28, at 2. The Parties discussed this proposal on March 21, 2013, but did not reach agreement on a kosher diet plan. *Id*. at 2. The next day – without notifying the United States – Defendants issued a new Religious Diet Program, Policy 503.006, that became effective on April 5, 2013. *See* Procedure 503.006 ("Religious Diet Program"), attached as Exhibit F.

The new Religious Diet Program will purportedly offer a kosher diet in most FDOC facilities by September 2013, but limits participation to prisoners who comply with extensive requirements, many of which violate RLUIPA, including eating exclusively non-kosher food for 30 to 90 days. Ex. F at 6. The new policy likewise establishes numerous bases for removing prisoners from the Religious Diet Program; removable offenses include a prisoner electing not to eat 10% of the available meals or purchasing a single item from the commissary that is deemed "not kosher" by FDOC officials. *See* Ex. F at 3, 8.

## ANALYSIS

A preliminary injunction is appropriate where the moving party shows: (1) a substantial likelihood of success on the merits; (2) that an injunction is necessary to prevent irreparable injury; (3) that the injury to the moving party outweighs whatever damage the proposed injunction might cause the non-moving party; and (4) that an injunction is in the public interest. *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 968 (11th Cir. 2005).

The United States meets this standard here. First, the United States is likely to succeed on the merits of its RLUIPA claim because FDOC's recent implementation of a kosher diet program precludes Defendants from showing – as RLUIPA requires – that *not offering* a kosher

diet is necessary to achieve a compelling government interest. Moreover, FDOC's new Religious Diet Program also contravenes RLUIPA, as the barriers to accessing and remaining in the Program burden religious exercise and are not tailored to any compelling interest. Second, absent an injunction, FDOC will continue to violate federal law and force hundreds of Florida prisoners to violate their core religious beliefs by consuming non-kosher food – archetypal examples of irreparable harm. Third, these injuries outweigh any harm to Defendants. Indeed, FDOC has already conceded that it can provide a kosher diet. Enjoining the barriers to participating in the kosher diet program, such as requiring prisoners to eat non-kosher food for 30 to 90 days, would lessen FDOC's administrative burdens. Fourth, an injunction that forces FDOC to comply with federal civil rights laws and protects the religious exercise of Florida prisoners is unequivocally in the public interest.

Without a preliminary injunction ordering Defendants to provide a kosher diet to all prisoners with a sincere religious basis for keeping kosher, violations of prisoners' rights will continue. As described more fully below, several provisions of Defendants' new Religious Diet Program violate RLUIPA. In addition, the entire program is tenuous as Defendants continue to assert that they have no legal obligation to provide a kosher diet to any Florida prisoners. Indeed, Defendants are currently taking this position in a case before the Eleventh Circuit, where Defendants' most recent filing argues that FDOC has "not violated the RLUIPA as the Department's [non-kosher] vegetarian and vegan meal plans further the compelling interests of the Florida correctional system." *Rich v. Secretary*, No. 12-11735 (11th Cir.), at 6. This litigation posture, combined with Defendants' prior resistance to maintaining a kosher diet[3], underlines the need for an order from this Court.

---

[3] As explained above, Defendants terminated their statewide kosher diet program in 2007 over the objection of their own Study Group, refused to expand their kosher Pilot Program in 2011,

## I. THE UNITED STATES IS LIKELY TO SUCCEED ON THE MERITS OF ITS RLUIPA CLAIM

The United States is likely to succeed on the merits of its claim that FDOC violates RLUIPA by failing to provide a kosher diet to prisoners with a sincere religious basis for keeping kosher. RLUIPA prohibits policies that substantially burden religious exercise except where a policy "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling government interest." 42 U.S.C. § 2000cc-1(a). Under this scheme, once a plaintiff proves that a challenged practice substantially burdens religious exercise, the burden shifts to the defendant to satisfy RLUIPA's strict scrutiny inquiry. 42 U.S.C. § 2000cc-2(b).

Here, there is no question that the inability to access a kosher diet since 2007 has substantially burdened the religious exercise of certain FDOC prisoners. Consequently, FDOC's policies violate RLUIPA unless Defendants demonstrate that denying a kosher diet is necessary to achieve a compelling interest. Defendants cannot make this showing. FDOC successfully offered a kosher diet to all eligible prisoners from 2004-2007, has operated the pilot kosher program since 2010, and recently enacted a new statewide kosher diet plan. *See* Ex. F. Under these circumstances, FDOC's argument that is has a compelling interest in *not providing* a kosher diet is incoherent – and foreclosed by settled law. *See, e.g.*, *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993) ("It is established in our strict scrutiny jurisprudence that a law cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited.").

---

refused to negotiate a kosher diet plan with the United States in 2012, and are now arguing before multiple federal courts that they have no obligation to provide a kosher diet to any prisoners.

Nor does FDOC's recently-enacted Religious Diet Program comport with RLUIPA's requirements. Although the Program ostensibly makes a kosher diet available at most FDOC facilities, it erects barriers to participating in the program – such as forcing prisoners to consume exclusively *non-kosher* food for several months – that substantially burden religious exercise. These provisions are not narrowly tailored to any compelling government interest. Accordingly, this Court should enjoin Defendants' Religious Diet Program and order Defendants to provide a kosher diet to all prisoners appraised to have a sincere religious basis for keeping kosher.

### A. Denying a Kosher Diet Substantially Burdens the Religious Exercise of Certain Prisoners

There is little question that FDOC's failure to provide a kosher diet since 2007 substantially burdens the religious exercise of prisoners with a sincere religious basis for keeping kosher – a point FDOC has conceded in other litigation over its dietary policies. *See Rich v. Buss*, No. 1:10-cv-157, 2012 U.S. Dist. LEXIS 28304, at *13 (N.D. Fla. Jan. 12, 2012) (noting that FDOC has not "disputed that their failure to provide a kosher diet to [the prisoner] substantially burdens his religious practice"). Religious exercise "is broadly defined under RLUIPA," *Smith v. Allen*, 502 F.3d. 1255, 1276 (11th Cir. 2007), and "there is no question" that keeping kosher is a religious exercise under the statute's definition. *Baranowski v. Hart*, 486 F.3d 112, 125 (5th Cir. 2007); *see also Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1304-05 (10th Cir. 2010) (halal diet a religious exercise).

FDOC's longstanding failure to provide a kosher diet substantially burdens this exercise. A burden is substantial under RLUIPA if it "is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1227 (11th Cir. 2004). Failing to provide a kosher diet easily meets this standard. *See, e.g.*, *Baranowski*, 486 F.3d at 125 ("policy of not providing kosher

food may be deemed to work a substantial burden upon [an inmate's] practice of his faith."); *Love v. McCown*, 38 F. Appx. 355, 356 (8th Cir. 2002) (affirming preliminary injunction requiring prison to offer kosher diet); *Willis v. Comm'r, Ind. Dep't of Corr.*, 753 F. Supp. 2d 768, 777 (S.D. Ind. 2010) ("DOC substantially burdened the Plaintiffs' religious exercise when it denied them kosher food."); *see also Beerheide v. Suthers*, 286 F.3d 1179, 1192 (10th Cir. 2002) (failure to provide kosher diet burdens free exercise of religion in violation of the First Amendment).

**B. Denying a Kosher Diet is Not Narrowly Tailored To Any Compelling Government Interest**

FDOC's failure to provide a kosher diet since 2007 cannot withstand RLUIPA's strict scrutiny inquiry. Most importantly, FDOC's newly-enacted kosher diet program demonstrates that FDOC can provide a kosher diet consistent with its interests, and FDOC cannot now assert that it has a compelling interest in not providing a kosher diet. The fact that all other large correctional institutions provide kosher diet options, each with the same penological interests as FDOC, confirms that there is no compelling government interest in not providing a kosher diet. Accordingly, FDOC's continued assertion that it is not obligated to provide a kosher diet under RLUIPA, most recently in Opposition to Summary Reversal filed with Eleventh Circuit just six weeks ago, must fail.

**1. FDOC's newly-implemented kosher diet program demonstrates that it does not have a compelling interest in denying a kosher diet**

It is well-established that a government defendant cannot have a compelling interest in avoiding an activity that it already permits. *See Church of the Lukumi Babalu Aye,* 508 U.S. at 547. Here, less than three months after Defendants asserted that refusing to offer a kosher diet was necessary to advance FDOC's interests in "security and good order" and "allocating scarce governmental resources," Answer, Dkt. No.16, at 7, FDOC implemented a new policy that

purportedly will offer a kosher diet system-wide. FDOC cannot simultaneously (a) argue that it has compelling interests in denying a kosher diet and (b) implement a statewide kosher diet plan.

Appellate courts have repeatedly affirmed this common sense conclusion. In *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781 (5th Cir. 2012), a prisoner challenged Texas' refusal to provide him with a kosher diet despite offering a kosher diet at a different state facility. The Fifth Circuit reversed the district court's grant of summary judgment in favor of the prison system, explaining that Texas' "argument that it has a compelling interest" . . . "is dampened by the fact that it has been offering kosher meals to prisoners for more than two years." *Moussazadeh*, 703 F.3d at 794. The First Circuit employed similar reasoning in *Spratt v. Rhode Island Department of Corrections*, 482 F.3d 33, 40 (1st Cir. 2007), holding that a prison system lacked compelling reasons for banning inmate preaching because the prison had previously allowed such preaching. *See also Koger v. Bryan*, 523 F.3d 789, 799, 801 (7th Cir. 2008) (denying request for a no-meat diet violated RLUIPA where prison offered such a diet to other prisoners); *Washington v. Klem*, 497 F.3d 272, 285 (3d Cir. 2007) (restriction on the number of religious books a prisoner may possess invalid where other facilities in the state system did not have such a restriction); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005) (hair length restriction on male prisoners failed strict scrutiny where prison allowed female prisoners to keep long hair).

The same principle applies here. FDOC's implementation of a statewide kosher diet program is fatal to its argument that denying such a diet is necessary to achieve a compelling interest. Accordingly, the United States is likely to succeed on the merits of its RLUIPA claim.[4]

---

[4] Prior to Defendant's adoption of the new Religious Diet Program, the U.S. District Court for the Northern District of Florida twice upheld FDOC's failure to provide a kosher diet against challenges from *pro se* prisoners, citing budgetary and security concerns related to establishing a statewide kosher diet program. *See Muhammad v. Crosby*, 2009 WL 2913412 (N.D. Fla. 2009)

#### 2. Defendants cannot meet strict scrutiny because other institutions with the same interests as FDOC offer a kosher diet option

The ability of other corrections institutions to provide a kosher diet consistent with their penological interests further demonstrates that FDOC cannot satisfy RLUIPA's strict scrutiny inquiry. Indeed, all comparably-sized correctional institutions in the United States – including systems operated by the Federal Bureau of Prisons, California, New York, Texas, and Illinois[5] – offer a kosher diet to prisoners with a sincere religious basis for requesting one. A survey by FDOC's own Study Group likewise found that 26 of the 32 state correctional systems surveyed offered a kosher diet. See Exhibit A at 19-20. The experience of these institutions underscores that FDOC's outright denial of a kosher diet since 2007 is not necessary to achieve a compelling government interest, as "the policies followed at other well-run institutions [are] relevant to a determination of the need for a particular type of restriction." *Procunier v. Martinez*, 416 U.S. 396, 414 n.14 (1974); *see also Spratt*, 482 F.3d at 42.

The Federal Bureau of Prisons' kosher diet program is particularly relevant because BOP "has managed the largest correctional system in the Nation under the same heightened scrutiny standard as RLUIPA without compromising prison security, public safety, or the constitutional rights of other prisoners." *Cutter v. Wilkinson*, 544 U.S. 709, 725 (2005). Indeed, where BOP accommodates a particular religious exercise, a defendant is unlikely to satisfy RLUIPA's strict scrutiny inquiry "in the absence of any explanation by [the defendant] of significant differences

---

and *Linehan v. Crosby*, 2008 WL 3889604 (N.D. Fla. 2008). These decisions are clearly inapt here, as Defendants have now promulgated a statewide kosher diet program that is fatal to their argument that *not providing* a kosher diet is necessary to achieve a compelling interest. Moreover, the unpublished decisions in *Linehan* and *Crosby* were limited to the meager factual records presented in those cases, which did not include the evidence currently before this Court relating to the kosher diet practices of comparable institutions.

[5] Indeed, FDOC's own study group recognized that California, New York, and Illinois provide a kosher diet option. *See* Ex. F. at 48. The Federal Bureau of Prisons has provided a kosher diet option since the early 1990s. *See* 8 C.F.R. § 548.20. The Texas Department of Criminal Justice has offered a kosher diet option for more than two years. *See Moussazadeh*, 703 F.3d at 794.

between [its prison] and a federal prison that would render the federal policy unworkable." *Spratt*, 482 F.3d at 42; *see also Warsoldier*, 418 F.3d at 999 (enjoining prison's hair length policy where "[p]risons run by the federal government, Oregon, Colorado, and Nevada all meet the same penological goals without such a policy").

Here, FDOC cannot identify any meaningful distinction between its operations and those of other large correctional institutions that require FDOC to deny access to a kosher diet. Absent such a distinction, the unanimous experience of other major American correctional institutions demonstrates that FDOC's denial of a kosher diet cannot withstand strict scrutiny.

**C. FDOC's New Kosher Diet Plan Violates RLUIPA**

For the reasons set forth above, this Court should issue a preliminary injunction ordering Defendants to provide a kosher diet to all prisoners with a sincere religious basis for keeping kosher. Defendants' new Religious Diet Program, issued seven months after the United States filed this litigation, does not vitiate the need for such an order. Rather, the Religious Diet Program violates RLUIPA by erecting barriers to participation that substantially burden religious exercise and are not narrowly tailored to a compelling government interest.

**1. Barriers to entering the Religious Diet Program violate RLUIPA**

Admission to the Religious Diet Program is governed by an onerous seven-step process that substantially burdens the religious exercise of prisoners desiring to keep kosher. At least two elements of this process plainly violate RLUIPA. First, the Program requires prisoner applicants to consume *non-kosher* food for 30 to 90 days[6] to demonstrate the "sincerity" of their request for a kosher diet. *See* Ex. F. at 5-6. This illogical provision imposes a substantial burden on its face, as it affirmatively requires prisoners to violate their religious beliefs after a FDOC

[6] The Program initially requires applicants to the Program to consume non-kosher vegan food for 90 days. After December 2, 2013, FDOC will require applicants to eat the non-kosher vegan food for 30 days. Ex. F at 6.

chaplain has deemed these beliefs sincere. *See, e.g.*, *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009) (failure to provide a non-meat diet during 40 days of Lent a substantial burden); *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006) (denying Muslim prisoner special Ramadan meals 24 out of 30 days violates RLUIPA); *Warren v. Peterson*, 2008 WL 4411566 (N.D. Ill. Sept. 25, 2008) (substantial burden to deny religious vegan meals for 13 consecutive days); *see also Miles v. Moore*, 450 F. Appx. 318, 319-20 (4th Cir. Oct. 19, 2011) (substantial burden to permit enrollment in religious services only on a quarterly basis). Nor is any compelling interest furthered by requiring prisoners to eat non-kosher meals for at least 30 days prior to gaining access to a kosher diet. This provision violates RLUIPA for the same reasons discussed on pages 8-10, *supra*.

Second, the Religious Diet Program violates RLUIPA by establishing a two-tiered process of prisoner interviews and follow up investigation focusing on the prisoner's fidelity to religious dogma. *See* Ex. F at 5-6. This process is incompatible with the individualized sincerity inquiry RLUIPA prescribes. While RLUIPA "does not preclude inquiry into the sincerity of a prisoner's professed religiosity," *Cutter*, 544 U.S. at 725 n.13, such an inquiry must be "handled with a light touch" and limited "almost exclusively to a credibility assessment." *Moussazadeh*, 703 F.3d at 792. It is difficult to imagine a heavier touch than the one contemplated by FDOC's Religious Diet Program, which permits chaplains to conduct staff interviews, inspect prisoner records, review the prisoner's past religious activities, conduct internet searches to "research diet requirements for specific religions," and interview clergy. *See* Exhibit F at 6. FDOC's screening procedures clearly "stray into the realm of religious inquiry," where government officials "are forbidden to tread." *Moussazadeh*, 703 F.3d at 792. Indeed, "clergy opinion has generally been deemed insufficient to override a prisoner's sincerely held religious belief." *Koger*, 523 F.3d at

799; *see also Jackson v. Mann*, 196 F.3d 316-320 (2d Cir. 1999) (sincerity of a prisoner's beliefs – not the decision of Jewish religious authorities – determines whether prisoner was entitled to kosher meals). Here, FDOC subordinates the prisoner's professed religious beliefs to clergy opinion, FDOC staff opinion, and internet research. Doing so violates RLUIPA.

**2. The Religious Diet Program's removal provisions violate RLUIPA**

At least two of the Religious Diet Program's removal provisions likewise violate RLUIPA. First, the Program removes participants who miss 10 percent of available meals, even if the prisoner never consumes a single non-kosher item. *See* Ex. __ at 3. This provision has no utility for gauging the sincerity of prisoners in the Religious Diet Program, and it punishes prisoners who may choose to skip a meal for personal or religious reasons.

Second, the Program establishes rigid guidelines for removing prisoners who consume any item that FDOC does not consider "kosher." A prisoner who purchases a non-kosher item from the commissary or consumes a non-kosher meal is suspended from the Religious Diet Program for 30 days for a first offense, 120 days for a second offense, and 1 year for all subsequent offenses. Ex. F at 8. Prisoners have no opportunity to explain their actions prior to removal. The Fifth and Seventh Circuits have specifically rejected this approach. In a recent decision, the Seventh Circuit noted that "a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance; for where would religion be without its backsliders, penitents, and prodigal sons?" *Grayson v. Schuler*, 666 F.3d 450, 454 (7th Cir. 2012). Indeed, a "few lapses in perfect adherence do not negate [a prisoner's] overarching display of sincerity." *See Moussazadeh*, 703 F.3d at 792. There, the Fifth Circuit held that a Jewish prisoner who repeatedly purchased non-kosher items from the commissary nonetheless "established his sincerity as a matter of law" by requesting a kosher diet and

pursuing litigation. *Id*. at 792. FDOC contravenes this principle by removing prisoners from the Religious Diet Program for consuming a single non-kosher item.

In short, several provisions of FDOC's newly-enacted Religious Diet Program violate RLUIPA. These violations, combined with FDOC's failure to provide a kosher diet to all but a handful of prisoners since 2007, demonstrate that the United States is likely to succeed on the merits of its RLUIPA claim.

## II. A PRELIMINARY INJUNCTION IS NECESSARY TO AVOID IRREPARABLE HARM

Absent an injunction, FDOC will continue to force hundreds of Florida prisoners to violate their religious beliefs by consuming non-kosher food, even under their new Religious Diet Program. This constitutes irreparable harm as a matter of law. It is well-established that the loss of First Amendment freedoms, even for brief periods, represents irreparable harm. *Elrod v. Burns*, 427 U.S. 347, 373 (1976). "This principle applies with equal force to the violation of RLUIPA rights because RLUIPA enforces First Amendment freedoms." *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 295 (5th Cir. 2012) (finding irreparable harm when RLUIPA is violated). In *Warsoldier*, the Ninth Circuit found that a prison regulation that burdened religious exercise under RLUIPA constituted irreparable harm. 418 F.3d at 1001-02 (raising a colorable claim of an RLUIPA violation "established that [prisoner] will suffer an irreparable injury absent an injunction"); *see also Beerheide*, 286 F.3d at 1192 (Failure to provide kosher diet burdens free exercise of religion in violation of the First Amendment); *Jolly v. Coughlin*, 76 F.3d 468, 482 (2d Cir. 1996) ("Courts have persuasively found that irreparable harm accompanies a substantial burden on an individual's rights to the free exercise of religion under RFRA [statute applying RLUIPA standard to federal government]"); *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F.Supp. 2d 766, 795 (D. Md. 2008) ("The infringement

of one's rights under RLUIPA constitutes irreparable injury."). Here, FDOC's dietary policies irreparably harm hundreds of prisoners on a daily basis by violating their right to religious exercise conferred by RLUIPA.

## III. A PRELIMINARY INJUNCTION WILL NOT HARM DEFENDANTS

Issuing an order requiring Defendants to implement a kosher diet program and enjoining the new Religious Diet Program will not harm Defendants. Indeed, Defendants now appear to concede that they should implement a kosher diet program, although they continue to assert that they are not obligated to do so under RLUIPA and want to reserve the right to discontinue the program. Accordingly, Defendants cannot argue that they will be harmed by instituting a kosher diet program.

Moreover, an injunction requiring Defendants' new Religious Diet Program to comply with RLUIPA is likely to *lessen* the administrative burden on FDOC staff. The impermissible components of the Religious Diet Program create significant administrative responsibilities, such as requiring FDOC staff to conduct multiple rounds of interviews and follow-up investigations to assess the "sincerity" of Program applicants, track and analyze all prisoner commissary purchases, monitor meal attendance, and respond to grievances and re-applications from prisoners removed from the Program. Requiring Defendants to implement a policy that offers a kosher diet option in accordance with RLUIPA will ease these burdens. For example, the Federal Bureau of Prisons admits to its kosher diet program all prisoners who make a request and submit to a single brief sincerity interview with a chaplain. *See* 28 C.F.R. § 548.20. Similarly, a federal court recently ordered the Indiana state prison system to admit prisoners to a kosher diet program without any interviews to test sincerity. *See* Final Judgment and Injunction, *Willis v. Indiana Dep't of Corrections*, No. 1:09-cv-815 (S.D. Ind. Dec. 8, 2010), Dkt. No. 110 at 2

(ordering state "to provide certified kosher meals to all inmates who, for sincerely held religious reasons, request them in writing").

Further, because the Religious Diet Program violates RLUIPA, an injunction will save Defendants from expending resources to train staff and otherwise implement a policy that is likely to be invalidated. *See Giovani Carandola, Ltd. v. Bason*, 303 F.3d 507, 521 (4th Cir. 2002) (enjoining implementation of a policy that is likely to be found a violation of law does not harm defendants). In short, an injunction will not burden Defendants.

## IV. A PRELIMINARY INJUNCTION SERVES THE PUBLIC INTEREST

Enforcement of federal statutes is in the public interest. *United States v. Alabama*, 691 F.3d 1269, 1301 (11th Cir. 2012) ("Frustration of federal statutes and prerogatives are not in the public interest"). This principle applies with special force to RLUIPA, which passed both houses of Congress unanimously as "the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens." *Cutter*, 544 U.S. at 713. By its terms, RLUIPA is broadly construed in favor of religious liberty "to the maximum extent permitted by [the statute] and the Constitution." 42 U.S.C. § 2000cc-3g. In enacting RLUIPA, Congress recognized that "some institutions restrict religious liberty in egregious and unnecessary ways," and noted that "[s]incere faith and worship can be an indispensible part of rehabilitation." 146 Cong. Rec. S6678-02, at S6688-89 (daily ed. July 13, 2000). By making these findings and enacting RLUIPA, Congress indicated that protection of prisoners' religious liberties is in the public interest. *See, e.g.*, *Monaghan v. Sebelius*, No. 12-15488, 2013 U.S. Dist. LEXIS 35144 at *35 (E.D. Mich. Mar. 14, 2013) (finding it in public interest that plaintiff not be compelled to act in conflict with his religious beliefs).

## CONCLUSION

Defendants' failure to provide a kosher diet since 2007 violates RLUIPA, as does the flawed Religious Diet Program that Defendants issued in response to this litigation. A preliminary injunction ordering Defendants to provide a kosher diet to all prisoners with a sincere religious basis for keeping kosher is necessary to stop these violations and prevent their future recurrence. Indeed, Defendants previously terminated a statewide kosher diet program against the recommendation of their own Study Group and continue to assert that they have no legal obligation to provide a kosher diet to any Florida prisoners. Accordingly, the United States asks this Court to issue a preliminary injunction ordering Defendants to provide a certified kosher diet to all prisoners with a sincere religious basis for keeping kosher and to enjoin Defendants' new Religious Diet Program to the extent it violates RLUIPA.

Respectfully submitted,

WILFREDO A. FERRER
United States Attorney
Southern District of Florida

VERONICA HARRELL-JAMES
Assistant United States Attorney
Southern District of Florida

ROY L. AUSTIN
Deputy Assistant Attorney General
Civil Rights Division

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT
Special Counsel
Special Litigation Section

s/ Michael J. Songer
MICHAEL J. SONGER

Special Florida Bar # 5501751
DEENA FOX
Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 514-6255
michael.songer@usdoj.gov

DATED: April 10, 2013

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I certify that the foregoing United States' Motion for a Preliminary Injunction was served through the electronic filing service on April 10, 2013, to the following individuals:

Susan A. Maher
Chief Assistant Attorney General
Office of the Attorney General
The Capitol – PL01
Tallahassee, FL 32399
Susan.Maher@myfloridalegal.com

Attorney for Defendants

*s/ Michael J. Songer*

MICHAEL J. SONGER
Attorney for the United States