**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff;<br><br>v.<br><br>SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS, *et al.*,<br><br>Defendants. | No. 1:12-cv-22958-SEITZ/SIMONTON<br><br>**UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION** |

## UNITED STATES' REPLY IN SUPPORT OF ITS MOTION FOR A PRELIMINARY INJUNCTION

The United States is likely to prevail in this litigation for one simple reason: after refusing to provide a kosher diet for six years, the Florida Department of Corrections ("FDOC") recently announced that it would start providing kosher meals to eligible prisoners in September 2013. As a matter of law, Defendants cannot simultaneously implement a kosher diet program and prove – as RLUIPA requires – that they have compelling interests in *denying* such a diet. Courts have repeatedly affirmed this principle. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 547 (1993); *Moussazadeh v. Texas Department of Criminal Justice*, 703 F.3d 781, 794 (5th Cir. 2012) (Texas' "argument that it has a compelling interest" . . . "is dampened by the fact that it has been offering kosher meals to prisoners for more than two years."); *Koger v. Bryan*, 523 F.3d 789, 799, 801 (7th Cir. 2008) (denying request for a no-meat diet violated RLUIPA where prison offered such a diet to other prisoners); *Washington v. Klem*, 497 F.3d 272, 285 (3d Cir. 2007) (restriction on the number of religious books a prisoner may

possess invalid where other system facilities did not have such a restriction); *Spratt v. Rhode Island Department of Corrections*, 482 F.3d 33, 40 (1st Cir. 2007); *Warsoldier v. Woodford*, 418 F.3d 989, 1001 (9th Cir. 2005).

Defendants make no effort to distinguish this authority.[1] Instead, they contend that this Court cannot render a decision on the merits because the United States' claim is moot. This argument is unavailing, and it underscores the need for a preliminary injunction to protect the religious exercise of Florida prisoners. A case is moot only where a government defendant has "completely and irrevocably eradicated the effects of the alleged violation." *Harrell v. Florida Bar*, 608 F.3d 1241, 1265 (11th Cir. 2010). This requirement is fatal to Defendants' mootness argument because: (1) Defendants continue to argue that they may deny a kosher diet to prisoners at any time; and (2) the recently-announced Religious Diet Program, like Defendant's former policies, violates RLUIPA. *See* Mot. for Prelim. Inj. at 12-15. Moreover, even if Defendants had already implemented a plan that complied with RLUIPA, this case would not be moot because voluntary cessation of challenged conduct "ordinarily does not suffice to moot a case." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. Inc.*, 528 U.S. 167, 174 (2000). This is equally true under RLUIPA's "safe harbor" provision, 42 U.S.C. § 2000cc-3(e). Otherwise, a defendant could "evade judicial review . . . by temporarily altering questionable behavior." *City News & Novelty, Inc. v. City of Waukesha*, 531 U.S. 278, 284 n.1 (2001). This principle resonates here, where Defendants: continue to defend the legality of denying a kosher diet; changed their challenged dietary policies in the midst of litigation; will not commit to maintaining their new Religious Diet Program in the future; and previously terminated a kosher diet plan despite a warning from their own study group that doing so would violate federal law.

[1] The only case in this line of authority that Defendants even acknowledge is *Moussazadeh*, which Defendants argue "did not destroy" their argument, but "merely called it into question." Opposition at 14.

In short, this case is not moot, the United States is likely to prevail on the merits, and hundreds of Florida prisoners will continue to suffer irreparable harm if the new Religious Diet Program is permitted to take effect without alteration.

## I. THE UNITED STATES' CLAIM IS NOT MOOT

### A. Defendants Have Not Eliminated Their RLUIPA Violations

To demonstrate mootness, a government defendant must first show that it has "completely and irrevocably eradicated the effects of the alleged violation." *Harrell*, 608 F.3d at 1265. RLUIPA's safe harbor provision incorporates the same standard. *Rouser v. White*, 630 F. Supp. 2d 1165, 1183 (E.D. Cal. 2009). Defendants' announcement that they will make a kosher diet available to certain prisoners in September 2013 does not meet this requirement, as mootness does not "follow announcement of an intention to change or adoption of a plan to work toward lawful behavior." 13C Charles Alan Wright, *et. al.*, Federal Practice and Procedure § 3533.7 (3d ed.). Regardless, even after the new Religious Diet Program is fully implemented, it will continue to violate RLUIPA in various ways. *See infra* at 9-10; Mot. for Prelim. Inj. at 12-15. Consequently, Defendants' new dietary policies will perpetuate – not eradicate – violations of federal law,[2] and the United States' challenge to those violations is not moot.

Moreover, Defendants' recent statements confirm that they have not "irrevocably" changed course. In their Opposition to the United States' Motion for a Preliminary Injunction, Defendants warn that they have only "at least for now, cobbled together the resources to provide [a kosher diet]." Opp. at 12. And FDOC's counsel refused to commit to maintaining the new diet policies during last month's oral argument in a separate case seeking a kosher diet:

---

[2] Defendants claim that this Court lacks jurisdiction to adjudicate deficiencies with the new Religious Diet Program because the United States does not address the Program in its Complaint. Opp. at 11-12. This argument is baseless. In its Complaint, the United States alleges that Defendants' diet policies violate RLUIPA, and Rule 8 does not require the United States to allege every fact that supports its claim. Fed. R. Civ. P. 8. In any event, Defendants themselves place the new dietary policy at issue by arguing that it moots the United States' case.

> **Court**: The State's position is that it can now get this case dismissed for mootness, and reinstate the no kosher diet in the future. Is that it?
> **FDOC:** Well, what constitutes a compelling interest-
> **Court**: Is that the State's position, that I just described? That they can have this case dismissed now for mootness, and be free to reinstate the policy in future?
> **FDOC**: Well, I don't think that's likely to happen, your Honor.
> **Court**: Is that the position of the State, that that states what they want this Court to hold?
> **FDOC**: I don't know what the Department of Corrections is likely to do in the future . . . .

Oral argument, *Rich v. Secretary*, No. 12-11735-D (Apr. 18, 2013), Exhibit A, at 11:40-12:28.

### B. Defendants' Blanket Denial of a Kosher Diet is Likely To Recur

Even if Defendants had already implemented a new kosher diet policy that complied with RLUIPA, this litigation would not be moot because "voluntary cessation of allegedly illegal conduct does not deprive the tribunal of power to hear and determine the case," *Nat'l Adver. Co. v. City of Miami*, 402 F.3d 1329, 1333 (11th Cir. 2005), unless "there is no reasonable expectation that the alleged violation will recur." *Harrell*, 608 F.3d at 1266. Government defendants that "unambiguously terminate"[3] challenged conduct are entitled to a "rebuttable presumption" that their conduct will not recur. *Id*. That presumption is easily rebutted here.

Defendants point to their "demonstrated [] commitment to providing a kosher diet to inmates," Opp. at 10-11, evidenced by the fact that they have "experimented with providing a kosher diet to inmates since 2004." Opp. at 10. But Defendants' "experiment" hardly demonstrates a commitment to a kosher diet. Rather, Defendants terminated their prior kosher diet program over the objections of their own study group in 2007, denied a kosher diet to virtually all prisoners from 2007-2013, refused to consider any type of kosher diet option when approached by the United States in 2012, and continue to argue the legality of denying a kosher

[3] Because Defendants continue to defend the legality of denying a kosher diet and their new kosher plan continues to violate RLUIPA, they have not "unambiguously terminated" their federal law violations and thus are not entitled to the rebuttable presumption. *See Harrell*, 608 F.3d at 1268 (where cessation "clouded by ambiguity . . . we cannot apply the governmental presumption."). Regardless, the presumption is easily rebutted here.

diet today. *See* Mot. for Prelim. Inj. at 3-5. The Eleventh Circuit has rejected mootness claims by government defendants that share these characteristics:

*i. Defendants continue to defend the legality of the challenged policy*

A case is not moot where, as here, a government defendant continues to defend the legality of the policy that prompted litigation. *See Nat'l Assoc. of Bds. of Pharmacy v. Bd. of Regents*, 633 F.3d 1297, 1312 (11th Cir. 2011) (copyright infringement suit not moot where professor "doubted that he had actually infringed [plaintiff's] copyrights"); *Sheely v. MRI Radiology Network*, 505 F.3d 1173, 1188-89 (11th Cir. 2007) (case not moot because defendant may "revert to the old policy it prefers and apparently believes to be legal"); *Jager v. Douglas Co. School Dist.*, 862 F.2d 824, 834 (11th Cir. 1989) (claim not moot where "defendants continue to press on appeal that the voluntarily ceased conduct should be declared constitutional"); *ACLU v. The Florida Bar*, 999 F.3d 1486 (11th Cir. 1983).

*ii. Defendants changed their longstanding policies in response to litigation*

"The timing . . . of a voluntary decision to cease a challenged activity [is] critical." *Harrell*, 608 F.3d at 1266. When challenged conduct is part of "a continuing practice . . . courts will not assume that it has been abandoned without clear proof," *United States v. W.T. Grant*, 345 U.S. 629, 632 n.5 (1953); *see also Sec. of Labor v. Burger King, Corp.*, 955 F.2d 681, 684 (11th Cir. 1992) ("five year history of violations" cut against mootness), particularly when the cessation occurs "late in the game." *Harrell*, 608 F.3d 1266. Here, Defendants' challenged dietary policies had been in place for nearly six years and were changed eight months after the United States filed this suit – factors that suggest the changes will not endure. *See, e.g., Sheely*, 505 F.3d at 1186 (11th Cir. 2007) (no mootness where change in policy "came almost nine months into this lawsuit"); *Harrell*, 608 F.3d at 1267 (no mootness where defendant exempted

plaintiff from challenged policy "after this litigation had commenced"); *Nat'l Advertising Co. v. City of Ft. Lauderdale*, 934 F.2d 283, 284 (11th Cir. 1991) (no mootness where city amended code six weeks after suit).

*iii. Defendants previously rescinded a similar policy change*

Defendants' termination of their prior kosher diet program likewise weighs against finding mootness here. In an analogous situation, the Eleventh Circuit rejected a mootness claim by a public university in a copyright infringement suit despite the university's representations that it would not use the copyrighted material in the future, emphasizing that "the Board of Regents made similar promises before [] and failed to keep them, prompting the current law suit." *See Nat'l Assoc. of Bds. Of Pharmacy*, 633 F.3d at 1311.

**C. RLUIPA's "Safe Harbor" Provision Confirms that This Case Is Not Moot**

Although Defendants terminated their prior kosher diet program and maintain that they can lawfully rescind their new Religious Diet Program at any time, they insist that the "likelihood that the alleged back conduct will reoccur" is irrelevant because this case is moot pursuant to RLUIPA's "safe harbor" provision, 42 U.S.C. § 2000cc-3(e). Opp. at 9. But the safe harbor provision does not apply here. Rather, it provides that "[a] government may avoid the preemptive force of any provision of [RLUIPA] by changing the policy or practice that results in a substantial burden on religious exercise . . . or by any other means that eliminates the substantial burden." 42 U.S.C. § 2000cc-3(e). Defendants fail the predicate requirement to "eliminate[] the substantial burden" because their new diet policy continues to violate RLUIPA.

Regardless, 42 U.S.C. § 2000cc-3(e) merely affirms the traditional voluntary cessation analysis. By its terms, the provision restates the basic principle that a RLUIPA claim may become moot where a policy change eliminates the substantial burden on religious exercise.

Indeed, "the only Court of Appeals that appears to have addressed this provision has interpreted it under a [traditional] mootness analysis." *Rouser*, 630 F. Supp. 2d at 1183 (interpreting *Urban Believers v. City of Chicago*, 342 F.3d 752, 762 (7th Cir. 2003)). This is "consistent with the plain language of § 2000cc-3(e), which relieves a government entity from liability only upon a showing of a change in its policy or practice." *Rouser*, 630 F. Supp. 2d at 1183 (government defendant had "not shown the type of permanent change that would cause the substantial burden of plaintiff's religious exercise not to recur."). Consistent with this view, federal courts in RLUIPA cases analyze mootness claims by government defendants under the traditional voluntary cessation test.[4] *See, e.g.*, *Covenant Christian Ministries, Inc. v. City of Marietta*, 654 F.3d 1231, 1244 (11th Cir. 2011) (In RLUIPA case against government defendant, "voluntary cessation of offensive conduct will only moot litigation if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction"); *Seneca v. Arizona*, 345 F. App'x. 226, 227 (9th Cir. 2009) (applying voluntary cessation test to prisoner's RLUIPA claim); *Nelson*, 570 F.3d at 882 (applying voluntary cessation to in prisoner's RLUIPA suit seeking a non-meat diet). In short, the voluntary cessation standard applies here, and Defendant's failure to meet it precludes a finding of mootness.

## II. THIS COURT SHOULD ENJOIN DEFENDANTS' UNLAWFUL DIETARY POLICIES

A preliminary injunction is appropriate because the United States is likely to prevail on the merits of its RLUIPA claim and easily satisfies the other preliminary injunction factors. *See* Mot. for Prelim. Inj. at 15-17. Indeed, Defendants' recently-announced Religious Diet Program

[4] Defendants argue that § 2000cc-3(e) allows the Court to find mootness "without requiring the showing needed in the usual run of government 'voluntary cessation' cases . . ." and suggest that the Eleventh Circuit's decision in *Beta Upsilon Chi Upsilon v. Machen*, 586 F.3d 908, 916 (11th Cir. 2009) supports this view. Opp. at 9. It does not. *Beta Upsilon* is not even a RLUIPA case; it simply restates the basic rule that mootness is judged under the voluntary cessation test, with a rebuttable presumption that a government defendant's unlawful conduct will not recur. 586 F.3d at 916. Defendants fail to acknowledge that the Eleventh Circuit applies the voluntary cessation test to government defendants in RLUIPA cases. *See Covenant Christian Ministries*, 654 F.3d at 1244.

establishes that the United States will prevail as a matter of law because it demonstrates that FDOC can provide a kosher diet consistent with its compelling interests. Defendants barely acknowledge the authority supporting this proposition, and their other asserted justifications for denying a kosher diet are baseless.

First, Defendants claim that the ability of similar institutions to provide a kosher diet "says very little, in the end, about whether Florida has a compelling interest in cost containment" because "the fiscal situations of the states necessarily vary." Opp. at 14-15. To the contrary, "the policies followed at other well-run institutions [are] relevant to a determination of the need for a particular type of restriction." *Procunier v. Martinez,* 416 U.S. 396, 414 n.14 (1974); *see also Warsoldier*, 418 F.3d at 999 (enjoining hair length policy where "[p]risons run by the federal government, Oregon, Colorado, and Nevada all meet the same penological goals without such a policy"). And while it is true that no two states have identical fiscal outlooks, Defendants do not identify any specific differences between FDOC and other correctional facilities that would justify Defendants' denial of a kosher diet. *See generally Spratt*, 482 F.3d at 42 (strict scrutiny requires "explanation [] of significant differences" at defendant's prison system).

Second, Defendants claim that denying a kosher diet is the only way to further its purportedly compelling interests in preserving costs because "not spending money must *always* satisfy [strict scrutiny] even when a state voluntarily provides a religious accommodation . . . ." Opp. at 16. This assertion is incompatible with RLUIPA's text, which provides that compliance with the statute "may require a government to incur expenses in its own operations to avoid imposing a substantial burden on religious exercise." 42 U.S.C. § 2000cc-3(c). Here, Defendants' expected kosher food expenditures are modest: approximately $2,100 per prisoner annually out of a budget of nearly $2 billion. Phillips Decl., Dkt. No. 35-1, at 2. Even using

Defendants' inflated participation estimate, the cost of providing a kosher diet would account for only .0017 of FDOC's budget.[5] There is no compelling interest in avoiding such a relatively minor expense. *See Beerheide v. Suthers*, 286 F.3d 1179, 1191 (10th Cir. 2002) (avoiding expenditure of .0016 of budget to purchase kosher food not rationally related to a penological interest); *Moussazadeh*, 703 F.3d at 795 ("we are skeptical that saving less than .005% of the food budget constitutes a compelling interest"); *El-Tabech v. Clarke*, No. 4:04CV3231, 2007 WL 2066510, at *3 (D. Neb. July 17, 2007) (court "incredulous" at defendant's claim that budgetary interests kept it from obtaining kosher items from a vendor).[6]

Third, Defendants new Religious Diet Program continues to violate RLUIPA:

*(i) 30 to 90 Day Rule:* The new Program illogically requires prisoners seeking a kosher diet to consume non-kosher food for a period of 30 to 90 days to prove the "sincerity" of their request. Defendants make no attempt to defend this provision, which plainly burdens religious exercise in violation of RLUIPA. *See, e.g.*, *Nelson v. Miller*, 570 F.3d 868, 880 (7th Cir. 2009) (failing to provide a non-meat diet during 40 days of Lent); *Lovelace v. Lee*, 472 F.3d 174, 194 (4th Cir. 2006) (denying Muslim prisoner special Ramadan meals 24 out of 30 days violates RLUIPA). Indeed, this provision requires prisoners who have kept kosher their entire lives to consume a non-kosher diet for 30 to 90 days to be eligible for the Religious Diet Program.

---

[5] Defendants extrapolate from the initial requests for participation in the Religious Diet Program at the Union facility that 1,630 prisoners would participate in the Program statewide, at a cost of $3.4 million. This estimate is inflated because Union has a significantly higher percentage of Jewish prisoners than the statewide population. *See* Taylor Decl. Dkt. No. 35-2. FDOC's prior statewide kosher program averaged participation of 250 prisoners per day. Defendants claim that 250 prisoners per day is an unreliable estimate because the prior program was limited to Jewish prisoners. Opp. at 6. This is incorrect; the prior program was open to prisoners of all faiths, as Defendants admit three pages earlier. *See* Opp. at 3 ("in 2006 the program was expanded to all [prisoners] claiming a religious need for a kosher diet, including Muslims and Seventh Day Adventists"). Thus, the true cost of the Religious Diet Program is much closer to $525,000 (250 x $2,100 per year), which constitutes .00028 of FDOC's budget.

[6] Defendants cite numerous pre-RLUIPA cases to argue that this Court should defer to Florida prison officials "about the existence of a compelling interest and whether the means chosen is the least restrictive." Opp. at 16. But these are "pure question[s] of law" decided by courts. *Lawson v. Singletary*, 85 F.3d 502, 512 (11th Cir. 1996). "Simply put, [FDOC] must demonstrate, and not just assert, that the rule at issue is the least restrictive means of achieving a compelling governmental interest." *Spratt*, 482 F.3d at 42.

*(ii) Orthodoxy Testing:* FDOC defends its aggressive sincerity testing by reciting the basic notion that "an inmate is not automatically entitled" to a kosher diet. Opp. at 22. But FDOC's test probes far more than "sincerity" – it involves multiple rounds of interviews and internet research to compare prisoners' beliefs with religious dogma. RLUIPA prohibits such inquiries. *Cf. Grayson v. Schuler*¸ 666 F.3d 450, 453-55 (7th Cir. 2012) ("Prison officials may not determine which religious observances are permissible because orthodox").

*(iii) 10 Percent Rule:* The Religious Diet Program punishes prisoners who simply choose not to eat a meal – conduct that has no bearing on their fidelity to a kosher diet. Defendants argue that a prisoner "is obviously not burdened" if he "declines to take a [] meal for a non-religious purpose." Opp. at 23. This misses the point. The ten percent requirement burdens prisoners by removing them from the program even if every meal they consume is kosher. Nor is this requirement the least restrictive means to avoid "waste," Opp. at 23, as Defendants can track average participation and adjust their kosher food order accordingly.

*(iv) Zero Tolerance Rule:* FDOC expels prisoners who consume a single item it deems to be non-kosher. This violates RLUIPA. *See Grayson*, 666 F.3d at 454 ("a sincere religious believer doesn't forfeit his religious rights merely because he is not scrupulous in his observance); *Moussazadeh*, 703 F.3d at 792 (a "few lapses in perfect adherence do not negate [a prisoner's] overarching display of sincerity").

## CONCLUSION

The United States asks this Court to issue a preliminary injunction ordering Defendants to provide a certified kosher diet to all prisoners with a sincere religious basis for keeping kosher and to enjoin Defendants' new Religious Diet Program to the extent it violates RLUIPA.

Respectfully submitted,

WILFREDO A. FERRER
United States Attorney
Southern District of Florida

ROY L. AUSTIN
Deputy Assistant Attorney General
Civil Rights Division

VERONICA HARRELL-JAMES
Assistant United States Attorney
Southern District of Florida

JONATHAN M. SMITH
Chief
Special Litigation Section

TIMOTHY D. MYGATT
Special Counsel
Special Litigation Section

s/ Michael J. Songer
MICHAEL J. SONGER
Special Florida Bar # 5501751
DEENA FOX
Attorneys
United States Department of Justice
Civil Rights Division
Special Litigation Section
950 Pennsylvania Avenue, N.W.
Washington, DC 20530
(202) 514-6255
michael.songer@usdoj.gov

DATED: May 13, 2013

Attorneys for the United States of America

**CERTIFICATE OF SERVICE**

I certify that the foregoing United States' Reply in Support of its Motion for a Preliminary Injunction was served through the electronic filing service on May 13, 2013, to the following individuals:

Susan A. Maher
Chief Assistant Attorney General
Office of the Attorney General
The Capitol – PL01
Tallahassee, FL 32399
Susan.Maher@myfloridalegal.com

Attorney for Defendants

*s/ Michael J. Songer*

MICHAEL J. SONGER
Attorney for the United States