**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
CASE NO. 12-22958-CIV-SEITZ/TURNOFF

UNITED STATES OF AMERICA,

        Plaintiff,

vs.

SECRETARY, FLORIDA DEPARTMENT OF
CORRECTIONS, *et al.,*

        Defendants.

_____/

## ORDER RE: CONTENTS OF INJUNCTION

On April 30, 2015, the Court entered its Order on Motions for Summary Judgment [DE-498]. In that order, the Court found that Plaintiff was entitled to entry of a permanent injunction based on Defendants' violations of RLUIPA. Subsequently, the Court ordered the parties to submit proposed injunctive language. Plaintiff's proposed language included terms for monitoring and enforcement of the injunction, to which Defendants objected. After additional filings and a hearing on July 15, 2015, at which the parties stated that they believed that they could work together to present agreed monitoring and enforcement language to the Court, Plaintiff filed the parties' proposed language with the Court [DE-537][1] on July 24, 2015.

_____

[1]In a footnote, the United States indicates that Defendant the Florida Department of Corrections is contesting the Court's jurisdiction over it because it was allegedly not properly served. First, the Court notes that the Florida Department of Corrections has not actually raised this issue with the Court. Second, and more importantly, the Florida Department of Corrections has waived any objection to personal jurisdiction. Attorney Jason Vail filed a notice of appearance [DE-48] on behalf of "defendants" on May 24, 2013. No objection to service or to personal jurisdiction has ever been raised. Further, the Court's Order on Motions for Summary Judgment [DE-498] clearly applies to "Defendants" and the Florida Department of Corrections did not raise any objections after entry of that order. Consequently, both that order and the Court's forthcoming injunction apply to both Defendants, the Secretary of the Florida

Because this injunction involves prison conditions, any terms of the injunction must meet the requirements of the Prison Litigation Reform Act (PLRA). This order addresses whether the parties' proposed language meets these requirements.

Under the PLRA, before the Court can issue an injunction, the Court must ensure that the injunctive relief sought complies with the dictates of the PLRA. Under the PLRA, any injunctive relief:

> shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1). The Eleventh Circuit interprets this provision to require a district court to make particularized findings as to each element of the injunction and perform a need-narrowness-intrusiveness analysis that provides a separate explanation as to each element. *Cason v. Seckinger*, 231 F.3d 777, 785 (11th Cir. 2000). However, a court need not do this about any facts or factors not in dispute. *Id.* at 785 n.8.

In discussing the requirements of the PLRA, the Supreme Court has explained:

> Narrow tailoring requires a "fit" between the remedy's ends and the means chosen to accomplish those ends. The scope of the remedy must be proportional to the scope of the violation, and the order must extend no further than necessary to remedy the violation. This Court has rejected remedial orders that unnecessarily reach out to improve prison conditions other than those that violate the Constitution. But the precedents do not suggest that a narrow and otherwise proper remedy for a constitutional violation is invalid simply because it will have collateral effects.

_____

Department of Corrections and the Florida Department of Corrections.

*Brown v. Plata*, 131 S. Ct. 1910, 1939-40 (2011) (internal citations, quotation marks, and brackets omitted).

While the parties agree to most of the monitoring and enforcement terms of the injunction,[2] Defendants object to the necessity of including these terms in the injunction. Consequently, the Court will analyze each of the terms under the PLRA's need-narrowness-intrusiveness standard.

*Policies and Procedures*

The parties proposed language includes a definition of "kosher diet," an auditing procedure, and a training procedure for the chaplains administering the Religious Diet Plan (RDP). The Court finds that each of these provisions is necessary. A definition of "kosher diet" is necessary to avoid any claims that the injunction, requiring service of a kosher diet, is vague. Further, given Defendants' continual refusal to acknowledge that they are required by law to provide a kosher diet to those prisoners with a sincere religious belief requiring them to keep kosher, auditing procedures are necessary. Training procedures are also necessary to ensure that prison personnel are uniformly applying the rules and procedures of the RDP across the State's sixty-plus prison institutions.

All of these terms are narrowly drawn to achieve the goal of providing kosher diets and continuing to maintain the standards necessary for providing kosher food. Further, these terms are the least intrusive means of achieving the goals of the injunction because these terms adopt policies already put in place by Defendants. The definition of a "kosher diet" utilizes the

_____

[2]The parties do not agree on the language to be used in the injunction that would give Plaintiff access to prison facilities, personnel, and prisoners. The parties language also differs as to access to Defendants' records related to the Religious Diet Plan.

certifying authority already used by Defendants. The auditing policy was developed and put in place by Defendants prior to the Court's request for the parties to provide injunctive language. The Defendants also began developing the chaplain training policy prior to the Court's order. Further, the Defendants have leeway to change these procedures without first obtaining Court approval. Thus, the Court finds that the parties' proposed policies and procedures language meets the requirements of the PLRA.

*Monitoring and Accountability*

The parties propose monthly reports and quarterly reports. The monthly reports would contain the total number of prisoners enrolled in the RDP on the 15th day of the prior month and a breakdown of that number by facility. The quarterly report would contain the number of prisoners who violated the RDP, the basis of the violations, the number of violations during the quarter, and the disposition of each violation. In addition, the quarterly report would also include the following information regarding the notices of violation: (a) the name of the prisoners who were issued a notice; (b) whether the disposition was based on written notice only or whether a fact-to-face interview was scheduled; and (c) the result of each notice.

The Court finds that both the monthly and quarterly reports are necessary. The information required by the reports will help the Court and Plaintiff ensure that Defendants comply with the Court's injunction. Given Defendants' continued insistence that they are not obligated to comply with RLUIPA and the Court's power to enforce its orders, such monitoring is necessary to ensure that Defendants continue to comply with RLUIPA. Further, the Court finds that these reporting provisions are narrowly tailored. All of the information requested is relevant to compliance with specifically enjoined activities. The reporting provisions are the

least intrusive means of achieving the goals of the injunction.  Defendants will be self-reporting, far less intrusive than having a third-party or Plaintiff conduct monthly on-site visits or having Plaintiff serve regular discovery requests.

The parties also propose that, each quarter, the United States shall identify five institutions for which Defendants shall provide copies of the Department of Corrections' form DC5-325.  Form DC5-325 is the form used to provide prisoners notice of a violation of the RDP. The Form has five parts: (1) the reason for the violation; (2) a space for the prisoner to explain his violation and why he should remain in the program; (3) an explanation of the type of review the chaplain has done; (4) the disposition of the violation; and (5) a space for the chaplain's notes.  A copy of the form is attached here to as Exhibit A.

The Court finds that providing the DC5-325 forms is necessary to allow the Plaintiff to monitor compliance with the Court's injunction, specifically the provisions of the injunction which prohibit the use of the ten percent rule and prohibit Defendants from suspending or removing prisoners without first providing an opportunity for a prisoner to contest the suspension or removal.  The provision is narrowly drawn because it only requires records related to alleged violations of the RDP and how the violations were addressed by Defendants.  The provision is not intrusive because it uses records already kept by Defendants and each quarter Defendants need only provide the records for the five chosen institutions.   Consequently, the parties' proposed accountability and monitoring provisions meet the requirements of the PLRA.

*Access to Inspect Facilities*

The parties could not agree on the language of this term.  Plaintiff has proposed the following language:

Defendants shall provide the United States reasonable access to personnel, prisoners, and facilities as pertinent to the United States' assessment of Defendants' compliance with this Injunction. Reasonable access will be provided to attorneys, experts, or other Justice Department personnel. The Defendants shall, until the termination of this Injunction, retain and provide the United States with reasonable access to documents relevant to the issues in this case (including prisoner requests to join the RDP, responses thereto, records of prisoner violations related to the RDP, and documents showing the cost of RDP meals).

Defendants propose the following;

The Parties shall have access to information relevant to compliance with the Court's injunctions concerning provision of the kosher diet, enforcement of the "10 percent" rule, and provision of a pre-suspension opportunity to contest a suspension pursuant to the discovery provisions of the Rules of Civil Procedure. However, the Court anticipates that the Parties will resolve any informational inquiries without resort to the discovery rules.

These two provisions differ significantly. Defendants' proposed language does not include access to personnel, facilities, or prisoners. Instead, Defendants propose giving Plaintiff access only to certain records. More than record access is necessary in this case.

Given the nature of providing a kosher diet, which includes proper preparation of the food, access to the facilities is necessary to ensure compliance with the Court's orders. Access to prisoners and personnel is also necessary in this case. The record in this case is full of prisoner letters alleging non-compliance with both the RDP and Court orders and alleging that prisoners have suffered retaliation for partaking in the RDP. In order to ensure that Defendants are complying with Court orders, Plaintiff must have reasonable access to prisoners and personnel to investigate the prisoners' claims and ensure that personnel are complying with the Court's orders. Thus, access to personnel, prisoners, and facilities is necessary.[3]

---

[3]At the July 15, 2015 hearing, all parties indicated that they did not think that a neutral monitor was necessary. Defendants now seem to indicate that no on-site monitoring is necessary because they will police themselves through their own internal auditing process. Quite simply, given Defendants' refusal to recognize their legal obligation to provide kosher meals, to rely only

Plaintiff's proposed language, however, may be slightly over broad as to facilities. Thus, the Court will limit facility access to the food preparation areas, meal serving areas, and dining areas. Giving Plaintiff access to facilities to inspect the food preparation areas and ensure that procedures are followed is narrowly tailored and extends no further than necessary. Further, such a provision is not overly intrusive because it does not require constant monitoring or the regular presence of a non-party. Giving Plaintiff access to the meal serving and dining areas is necessary given the numerous prisoner complaints about the lack of proper kosher procedures in the serving of the meals and problems in the dining areas. Further, such a provision is not overly intrusive because it does not require constant monitoring, the presence of a non-party monitor, and does not extend to non-food related areas of the Defendants' facilities. Consequently, access to food preparation, serving, and dining areas meets the need-narrowness-intrusiveness test of the PLRA.

Access to personnel and prisoners to access compliance with Court orders is narrowly drawn to allow Plaintiff to gather information about training, compliance, and treatment of prisoners who choose to partake in the RDP. Such a provision is not overly intrusive because it does not require the constant presence of a non-party or a party. Consequently, access to personnel and prisoners meets the need-narrowness-intrusiveness requirements of the PLRA.

Finally, both sides agree that Plaintiff should have access to records related to the RDP. Such access is necessary to ensure that Defendants continue to comply with the Court's orders. Access to records related to the RDP is a narrowly tailored provision because it only provides

---

on Defendants' own self monitoring as the sole form of on-site monitoring of the RDP would be unreasonable.

access to the relevant records - those relating to the subject of this litigation.  Because it only provides access to limited records and does not require that the records be produced in any particular way, this provision is not intrusive.  Consequently, the records access provision meets the requirements of the PLRA.

*Other Terms*

The parties propose that Plaintiff give Defendants thirty (30) days notice to cure any alleged violation of the injunction.  If the violation is not cured within that time, Plaintiff may initiate a court proceeding to address the violation.  The parties have agreed to this provision and, given that it is non-substantive and is not a form of prospective relief, it need not meet the requirements of the PLRA.  Finally, the parties wish to include language stating that the modification and termination of the injunction are governed by the terms of the PLRA and Federal Rule of Civil Procedure 60.  This term is simply a statement of existing law and therefore does not need to meet the need-narrowness-intrusiveness requirements of the PLRA.

Accordingly, it is

ORDERED that:

1. The parties' joint proposed language meets the requirements of the PLRA.  The Court will utilize the joint proposed language in its final injunction.

2. The Court will utilize a narrower version of Plaintiff's access to facilities, personnel, and prisoners language which will comply with the PLRA.

3. The Court will enter a separate injunction.

DONE and ORDERED in Miami, Florida, this _12_ day of August, 2015.

PATRICIA A. SEITZ
UNITED STATES DISTRICT JUDGE

cc:     All Counsel of Record

8

**FLORIDA DEPARTMENT OF CORRECTIONS**
**RELIGIOUS DIET PROGRAM**
**NOTICE OF VIOLATION**

| | |
|---|---|
| **INMATE NAME:** | **FACILITY:** |
| **DC#:** | **HOUSING UNIT:** |
| **RELIGION OF RECORD (OT23):** | **NOTICE DATE:** |

Please be advised that you are in violation of the Religious Diet Program ("RDP") for the following reason:

_____ It has been determined that you have purchased, possessed, or consumed food products or attempted to purchase, possess or consume food products that are not consistent with or that specifically violate the standards of the CFO diet. (See attached.)

_____ You have been found to be unable to manage the religious diet in a manner consistent with institutional safety or security.

_____ You have been found to have bartered, stolen, or improperly possessed food from the CFO meals. (See attached.)

You are being considered for suspension from the RDP. If you are interested in continuing your participation in the RDP you must complete this from and return it to the Chaplain within five (5) days of the "Notice Date" listed above. The Chaplain will consider any response you provide before a suspension or removal decision is made.

## PART A: FACTS FOR CONSIDERATION

Please explain **IN DETAIL** why you violated the RDP program, and why you should be allowed to remain in the program:

_____
_____
_____
_____
_____
                                                        *(Add additional sheets if necessary.)*

## PART B: CHAPLAINCY REVIEW

_____ I have reviewed the information above and have determined that the above named <u>inmate shall come to an interview</u> to further explain the violation. (Interview notes will be made on Part D: Chaplaincy Notes.)

_____ I have reviewed the information above and have determined that <u>no interview is necessary</u>. The disposition noted below is supported by the information supplied in Part A, Part D and any additional information attached hereto.

_____ Inmate did not return the form or forward any explanation for the violation.

_____ Inmate failed to respond to the call-out.

_____
Chaplain                                                        Date

## PART C: DISPOSITION

After completing my review, I have determined the following disposition to the violation:

_____ Counseling only; no suspension.
_____ 1st Violation: Suspended for 30 days.
_____ 2nd Violation: Suspended for 120 days.
_____ 3rd Violation or Subsequent: Suspended for one (1) year.

| **PART D: CHAPLAINCY NOTES** *(For use by Chaplaincy Only)* |
|---|
| |
| _____ |
| _____ |
| _____ |
| _____ |
| Chaplain                                          Date |

DC5-325 (Revised 7/28/15)                    Exhibit A